IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AT SAN ANTONIO

UNITED STATES OF AMERICA,

                    Plaintiff,          No. SA:12-CR-00899,
                                        SA:13-CR-00568, &
vs.                                     SA:13-CR-00572

ISRAEL HERNANDEZ, JR.,

                                        San Antonio, TX
                    Defendant.          October 30th, 2013


TRANSCRIPT OF SENTENCING & FINAL REVOCATION HEARING PROCEEDINGS
BEFORE THE HONORABLE DAVID A. EZRA
SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES

APPEARING FOR THE PLAINTIFF:

    Mr. David Shearer
    Assistant United States Attorney
    601 N.W. Loop 410
    Suite 600
    San Antonio, Texas  78216-5512
    210-384-7025
    david.shearer@usdoj.gov

APPEARING FOR THE DEFENDANT:

    Mr. Richard Emil Langlois
    Langlois & Synder
    217 Arden Grove
    San Antonio, Texas  78215
    210-225-0341
    richardl@stic.net

COURT REPORTER:

    Kristin M. Anderson, RPR
    United States Court Reporter
    655 E. Cesar E. Chavez Blvd.
    San Antonio, TX 78206
    210-244-5048
    kristin_anderson@txwd.uscourts.gov

1    THE CLERK:  We have, *United States of America vs.*

2    *Israel Hernandez, Jr.*, in SA:12-CR-899, SA:13-CR-568, and

3    SA:13-CR-572.

4    MR. SHEARER:  Good morning, Your Honor.

5    David Shearer for the United States, ready for sentencing and

6    revocations.

7    MR. LANGLOIS:  Good morning, Your Honor.

8    Rich Langlois with Mr. Hernandez --

9    THE COURT:  All right.

10    MR. LANGLOIS:  -- we're ready to proceed.  I

11    apologize.  When I left Monday, I thought it was at 10:30.  And

12    I've been out of the office for the last two days in Del Rio

13    and in trial yesterday, so I apologize.  I thought I checked

14    all of my e-mails.

15    THE COURT:  It's okay.  That's fine.

16    MR. LANGLOIS:  Do you want us at the podium, or would

17    you like us --

18    THE COURT:  No, you can do it -- as long as you speak

19    up, it's fine.

20    MR. LANGLOIS:  Sure.  Thank you, Judge.

21    THE COURT:  Now, I want to make something clear

22    because it isn't clear to me in looking at the papers.  There

23    is a plea agreement with respect to the initial core sentencing

24    here, not the --

25    Does that plea agreement cover the revocations or not?

1    MR. SHEARER:  It does not, Your Honor.

2    MR. LANGLOIS:  It does not.

3    THE COURT:  It doesn't appear to me to.

4    MR. SHEARER:  No, I did not -- up in the caption of

5    the plea agreement, I did not include those cause numbers

6    simply because I thought, at least, if the Court cares what my

7    thought process was, I thought if he's pleading guilty to this,

8    the Court is going to find him guilty of this, and that's then

9    going to trigger -- that's going to give the Court all it needs

10   to revoke him on the other two.

11   THE COURT:  Yeah, but he still would have -- he still

12   has the option of appealing the sentence I give him in the

13   revocation.

14   MR. SHEARER:  That never occurred to me.

15   THE COURT:  Well --

16   MR. SHEARER:  We -- we -- I just never thought of

17   that.  Sorry.

18   THE COURT:  Well, don't -- listen, you know, don't --

19   it's not that you're -- I mean you shouldn't be sorry for me.

20   I mean I'm not --

21   MR. SHEARER:  Right, because my appellate section

22   will look at me and go, you're an idiot.  You need to handle

23   this.  Right.

24   THE COURT:  I mean it seemed to me like what you were

25   intending to do was to wrap all of this up in one, and, as part

1    of the deal, have him waive his appellate rights, but it

2    appears that he doesn't waive his appellate rights with respect

3    to the revocation sentence.  I mean I don't think that he's got

4    much -- would have much of a leg to stand on with respect to

5    the revocation, but he would still have the right to appeal the

6    sentence.  And so there we are.

7              MR. SHEARER:  Agreed, Your Honor.  A lot of times,

8    because the -- our office policy is the guideline policy that

9    it has to be stacked, and defendants want to ask that it be run

10   concurrent, we could usually never agree on those things in

11   plea agreements, and so that may be also part of the way it's

12   factored in.

13             THE COURT:  Well, I've had plenty of revocations

14   where the defendant has waived his right to appeal since I've

15   been here, and I certainly, in my 26 years as a federal judge,

16   have had lots and lots of them.  I sat in San Diego and Tucson

17   and Phoenix handling these kinds of cases, and there's just no

18   question that that's what happens.  And so I mean if -- if you

19   want to put this off, and I mean I'm not going to involve

20   myself in the plea negotiation process, but it appears to me

21   that there's been some mistake here.  And, if there has, and

22   the Government wants to reevaluate its position, I'll be happy

23   to continue this.

24             MR. SHEARER:  Oh, no, Your Honor.  We're all here.  I

25   think we might as well go ahead.  I agree with the Court.  He's

1  not going to have -- he can appeal.  I mean if the Court is

2  going to find that he committed a new crime because he's plead

3  guilty in the SA:12 case, I don't think he's going to be able

4  to appeal that.  If he's -- if he's going to appeal the fact

5  that you stacked the sentences instead of running concurrent, I

6  don't know that there's any law that's going to support his

7  position that you can't do that --

8          THE COURT:  All right.

9          MR. SHEARER:  -- so --

10         THE COURT:  Well, you know, as I said, I'm happy to

11 go forward.  I just -- it just appeared to me that there had

12 been an oversight.  Okay.  Because I do look at these things.

13     All right.  Counsel, have you had -- we'll do the core

14 sentencing first.  Have you had the opportunity to read,

15 review, and discuss the presentence investigation and report

16 with your client and make any objections you wish to make?

17         MR. LANGLOIS:  I have, Your Honor, and I have filed

18 objections.

19         THE COURT:  Right.  So I'm going to address those.

20 Do you want to make further argument on them?  You've already

21 made it in writing.

22         MR. LANGLOIS:  I have, Your Honor.  And, for the

23 Court's information, I sat in -- joined the sentencing of

24 Mr. Ruiz Monday, so I observed what happened at that time and

25 am aware of how you ruled on the objections.

1          MR. SHEARER1:  And we'll concede, Your Honor, on -- I

2     think it's his Objection No. 3, the -- his objection was that

3     it wasn't agreed to in the facts, the -- the obstruction.  And

4     I understand the Court's position that these facts don't

5     rise -- these facts don't support that enhancement, and so

6     we'll just concede that right now and save everybody a lot of

7     time.

8          THE COURT:  All right.

9          MR. LANGLOIS:  And I think the only issue is whether

10    or not he qualifies as a career offender, and I believe I may

11    lose that.

12         THE COURT:  You believe right.

13         MR. LANGLOIS:  Pardon me?

14         THE COURT:  You believe exactly right.

15         MR. LANGLOIS:  Okay.  But, at the time, you had to

16    raise it, Your Honor, and it was somewhat confusing.

17         THE COURT:  Yeah.  No, I understand --

18         MR. LANGLOIS:  And I think I probably --

19         THE COURT:  -- that's why we put it over the last

20    time --

21         MR. LANGLOIS:  Yeah.

22         THE COURT:  -- so -- all right.

23         On June the 3rd the defendant plead guilt to conspiracy to

24    distribute a controlled substance containing a detectable

25    amount of methamphetamine in violation of 21 United States Code

1  Section 841(a)(1), 840(b)(1)(A), and 846.  The Court -- which

2  was Count 1 of the single count indictment.  The Court has

3  reviewed the plea agreement in conjunction with the presentence

4  investigation report.  I am satisfied that it does adequately

5  represent the seriousness of the offense behavior and does not

6  undermine the statutory purposes of sentencing, and I hereby

7  accept the plea agreement entered into between the parties in

8  this matter.

9      On October the 24th of this year, the Government has filed

10  a motion for downward departure pursuant to United States

11  Sentencing Guidelines 5K1.1 and a motion to seal.  The

12  Government's motion requested the Court to reduce defendant's

13  sentence from 360 months down to a 300-month term of

14  imprisonment.

15      Now, the Court will address the factual findings and the

16  guideline calculations as to which there were objections.  The

17  Court adopts those to which there were not any objections.

18  Defendant's Objection 1, Paragraph 31 and 34, the defendant

19  objects to the three criminal history points for a prior

20  conviction of more than one year and one month in Case

21  No. 656028 because it occurred on July the 29th of 1993 which

22  is more than 15 years before the commencement of the instant

23  offense.  He does not believe that it should be counted.

24      The Court disagrees, and the Court overrules the objection

25  under 4A1.2, which governs the computation of criminal history

1   points, it provides, in relevant part, any prior sentence of

2   imprisonment exceeding one year and one month that was imposed

3   within 15 years of the defendant's -- commencement of the

4   instant offense is counted.  Also count any prior sentence of

5   imprisonment exceeding one year and one month, whenever

6   imposed, that resulted in the defendant being incarcerated

7   during any part of the 15-year period.  In essence, any prior

8   conviction, no matter how old, is counted if due to that

9   conviction the defendant was incarcerated for more than a year

10  and a half within the 15-year period.

11       In this case, the defendant was originally sentenced to

12  more -- sentenced more than 15 years before the commencement of

13  the crime.  His parole for that conviction, however, was

14  revoked for more than a year and a half within the relevant

15  15-year period from 2004 to 2006.  Accordingly, under the

16  above-quoted provisions, this period of incarceration of more

17  than a year and a half means that his 1995 conviction should be

18  counted for purposes of the criminal history.  And I could cite

19  a whole bunch of Fifth Circuit cases.  I won't do that here

20  unless you want me to?

21       MR. LANGLOIS:  No, Judge, I think with the

22  revocation, and stuff like that, I think he probably did not

23  terminate his sentence until late 2000.

24       THE COURT:  That's correct.

25       MR. LANGLOIS:  And that's not within 15 years.

1      THE COURT:  And according to 4.1.1, a defendant is a

2  career offender if the defendant was at least 18 years old at

3  the time he committed the instant offense, the instant offense

4  of conviction is a felony that is either a crime of violence or

5  a controlled substance offense.  The defendant has at least two

6  prior felony convictions of either a crime of violence or a

7  controlled substance offense, and the defendant qualifies under

8  all of those.

9      Objection No. 2, as to Paragraphs 18 and 26, the defendant

10  objects to a two-level upward adjustment for his role as an

11  organizer.  In this case, Mr. Hernandez was in fact the initial

12  planner of the trip to Brownsville.  He recruited Mr. Ruiz,

13  who, as we all know, I sentenced yesterday, to carry out his

14  plan.  Mr. Ruiz then recruited Mr. Kessler as a driver to

15  transport the methamphetamine from Brownsville to Laredo.

16  Mr. Hernandez supervised that trip.  He is, therefore, an

17  organizer.  The objection is overruled.

18      The final objection was to Paragraph 17, 20, and 27.

19  Mr. Hernandez objected to a two-level adjustment for

20  obstruction of justice.  I went over this in some great detail.

21  The Government has conceded, and I should put it on the record.

22  There's no question in my mind that it appears, at least from

23  the record, that Mr. Ruiz and Mr. Hernandez concocted a plan

24  together to kill Mr. Kessler, no question about it, in my view.

25  Not a small matter to say the least.  Actually, Mr. Hernandez

1  is very fortunate it didn't happen because we wouldn't be

2  sitting here with this sentence.  I would be presiding over a

3  death penalty case because murder in the commission of a drug

4  crime qualifies, under federal law, for the death penalty.  And

5  having presided over a death penalty case in my prior life as

6  an active judge, I know what the rules are.  And both Mr. Ruiz

7  and Mr. Hernandez would have definitely qualified.  Now,

8  whether the Government would have sought it for Mr. Ruiz is a

9  question of -- but there's no question they would have sought

10 it for Mr. Hernandez.  So I agree with the Government.  It's a

11 serious matter.  There's no question about it.

12      However, what the Government sought to do here was to hold

13 the defendant accountable on account of that plan for

14 obstruction of justice, and it doesn't fit.  The reason they

15 wanted to kill Mr. Kessler was not because he was going to --

16 or, quote, unquote, rat them out, or they were afraid he was

17 going to cooperate with the Government, or he was cooperating

18 with the Government, all of which would have certainly

19 qualified for an obstruction of justice enhancement, they

20 thought he stole the drugs, and that doesn't qualify for an

21 obstruction of justice enhancement.

22      Now, the Government could have, but did not, indict these

23 two gentlemen for attempted murder or racketeering, both of

24 which they could have done but didn't do.  So all I have in

25 front of me are the flat out drug sentences, and -- and that's

1  what I am going to sentence him on.

2      So the offense level is 37, criminal history category is

3  6.  The guideline imprisonment range is 360 months to life

4  without parole.  Probation is not authorized.  Supervised

5  release of at least five years, a fine of 20,000 to 10 million

6  dollars, and restitution is not available.

7      Okay.  Now, the Government has filed a motion for downward

8  adjustment, and I grant that motion for the reasons stated in

9  the motion.  I won't reiterate it here because that is under

10  seal.

11      Is there anything else you want to add?

12          MR. SHEARER:  No, Your Honor, only for Mr. Hernandez'

13  edification, there's a potential for Rule 35.  I don't want him

14  to give up hope.

15          THE COURT:  All right.  Well, listen, I'm not feeling

16  too sorry for Mr. Hernandez here I have to suggest to you.  I

17  mean this is a man who has been involved in significant drug

18  activity who was -- would have been happy to see Mr. Kessler

19  killed.  I am not exactly over here concerned about his

20  potential sentence in that regard.

21      Now, with that backdrop, would you like to address the

22  Court?

23          MR. LANGLOIS:  Well, Judge, I'm well aware of what

24  the situation my client is in, and I, too, have done probably a

25  dozen death penalty cases in the state system, so I'm well

1  aware what happens in that type of situation.  But, in this

2  case, I'm well aware of my client's history of significant drug

3  transactions and some --

4          THE COURT:  And his involvement with the drug

5  kingpins down in Mexico?

6          MR. LANGLOIS:  I believe he is, Your Honor, and I

7  believe that information was conveyed, yes.

8      However, in his benefit, you know, fortunately, he's

9  raised some good children, and I met one of his daughters

10 that's going to UTSA here in San Antonio.  And, obviously,

11 she's struggling without her father, but, you know, that's a

12 choice he made for her and not that she made for him.  And he

13 recognizes that.  I will say this that he joined, during our

14 representation, we've had at least three or four meetings with

15 agents, and he has put himself and his family somewhat in

16 danger in a situation like this.

17         THE COURT:  Yeah, I wouldn't advise any of them to

18 take a trip down to Mexico anytime soon.

19         MR. LANGLOIS:  No.  And I believe his family has

20 suffered from some of those things, but it's because of what

21 they chose to get themselves involved in.

22     And, you know, a downward level of 300 is -- I think is

23 like a 25-year sentence, and it's, you know, certainly, I know

24 I'm not going to live another 25 years --

25         THE COURT:  Don't give up hope.

1    MR. LANGLOIS:  Judge, you know -- well, you know,

2  I'll say that.  I'm also 70, and my mom, you know, bless her,

3  has turned 96, and she's still going strong.

4    THE COURT:  Listen, my mentor, Martin Pence, an

5  old-time federal judge appointed by John F. Kennedy, was still

6  on the bench up until the day he died at 95.

7    MR. LANGLOIS:  Yeah.

8    THE COURT:  He served 50 years as a federal judge if

9  you can imagine.

10    MR. LANGLOIS:  However, you know, my client

11  certainly -- a 25-year sentence is, you know, going to

12  institutionalize him, and, you know -- but that's -- you know,

13  he understood the significance, and I think he appreciates the

14  Court willing to go along with the downward departure, and I

15  think there's hope that there may be other things because he

16  may have to testify in some proceedings up in Dallas.

17    THE COURT:  All right.  Does he wish to address the

18  Court?

19    MR. LANGLOIS:  He may.

20    THE DEFENDANT:  Your Honor, I just want to apologize

21  to the United States and to yourself, and God bless you.

22    THE COURT:  All right.

23    MR. LANGLOIS:  Judge, I have one other thing I would

24  like to add --

25    THE COURT:  Yes, sir.

1    MR. LANGLOIS:  -- if I may?

2        I received a letter from Ramona Hernandez Garcia, who is

3    my client's mother, and she is aware of what's going on, and

4    she, obviously, was hoping that he could self-surrender, but we

5    know that that's, you know, impossible and not going to happen.

6    And that she is in -- you know, has some serious health

7    concerns, and she has been, you know, diagnosed with Diabetes

8    Type 2 in her early 40s, and I can understand that because I've

9    gone through that myself.  But we have a lot better medication

10   nowadays than we did several years ago.  And she seems to be

11   suffering from cancer treatments and stuff like that.  So one

12   of the significant factors my client is going to have to suffer

13   during his period of his incarceration is the loss of his

14   mother.  And, you know, I know that's going to affect him

15   tremendously, but that's not going to affect his sentence.  And

16   my client has been in custody for well over a year.

17        THE COURT:  Okay.  Well, you know, these are always

18   difficult cases because, in this case, the Court has to weigh

19   the benefit to the Government of the defendant's cooperation as

20   against the seriousness of the crimes that -- that the

21   defendant has committed.  And it's never an easy calculus for

22   the Court.

23       I remember speaking with the federal judge that had to

24   accept the plea agreement for Sammy "The Bull" Gravano who was

25   essentially let off the hook for multiple murders in order for

them to gain his testimony against a number of individuals including, of course, the major individual, our late friend, the Dapper Don.  But, I'll tell you, that judge had to swallow hard.

In this case, we're looking at 300 months which is close to 25 years or so, I think.  He's served some time, so he'll get credit for that.  I guess he's what, 41, now?

THE DEFENDANT:  2.

THE COURT:  42?

THE DEFENDANT:  (Defendant nods head.)

THE COURT:  So he'll be about 65 or 66 when he gets out of jail because there's no -- there is a little bit of good time, but very little, and there's no parole.  So I mean I don't think your life is over.  I hope it isn't.  I mean I'm 66, so I truly don't.  I think he will have some time left, but he certainly is going to lose a good chunk of his life.  But if there was not a -- if there wasn't a sentencing agreement here, if he hadn't cooperated, I would not have hesitated in the -- for a second under these facts in sentencing him to life without possibility of parole because his involvement with the Mexican drug gangs, his willingness to commit murder are very troubling to the Court, and I think in his present state he poses a substantial risk to the general public, and so I certainly would not do -- would not hesitate to do that.

But I have to honor and respect the fact that the

1   Government needs this kind of information.  There's no way that

2   these major drug organizations can be infiltrated and

3   disrupted, and their violent activities curtailed without the

4   help of individuals who cooperate.  And the Court has an

5   obligation I think to assist in that process.  And, if I don't

6   recognize that, then people are simply not going to cooperate

7   with the Government because they won't have any insensitive to

8   do that.

9        So the Court, looking at the 3553 factors, hereby accepts

10  the plea agreement, as I've previously done, accepts the -- and

11  grants the Government's motion for downward departure and

12  hereby sentences the defendant to the care, custody, or control

13  of the Attorney General of the United States, or its authorized

14  representative, for a term of 300 months.  After he has

15  completed the term of imprisonment, he must serve a five-year

16  term of supervised release.  During the term of supervised

17  release, he shall abide by all standard conditions adopted in

18  this Court's July 2011 order.  And he appears he does not have

19  the financial ability or resources to pay a fine, so I will not

20  impose one.  But he must pay the United States a special

21  assessment of a hundred dollars.

22       The defendant, through his plea agreement, has waived his

23  right to appeal, so he has no appeal available to him.

24       All right.  Let's get on very quickly, because we've got

25  civil lawyers here who are totally uninterested in what we're

1  doing up here and would like me to get to their case, and I can

2  certainly understand it because that's what I used to do for a

3  living.  So let's get to the two supervised release

4  revocations, and I'll try to deal with them simultaneously if

5  there's no objection to that?

6          MR. SHEARER:  Not from the Government, Your Honor.

7          MR. LANGLOIS:  No, Judge.

8          THE COURT:  Have you had a chance to go over with

9  your client the two petitions for revocation and file any

10  objections you wish to file --

11          MR. LANGLOIS:  I have somewhat, yes, Judge, and we

12  have two guideline estimates for this.  The two cases were

13  transferred, I believe, from the Laredo District to here --

14          THE COURT:  They were.

15          MR. LANGLOIS:  -- they went from Florida to Laredo to

16  here, then from Mexico to somewhere to here --

17          THE COURT:  Right.

18          MR. LANGLOIS:  -- yeah --

19          THE COURT:  It's not uncomplicated let's put it that

20  way.

21          MR. LANGLOIS:  Yeah, and one of them I believe is 18

22  to 24 months.  The other is 27 to 33 months.

23          THE COURT:  That's right.

24          MR. LANGLOIS:  And, you know, the only thing, you

25  know, I'm asking is, obviously, I'm hoping that the Court will

1    at least run them concurrent.  I know you don't have to, but

2    considering the 25-year sentence, we're asking that, you know,

3    if we can get, you know, a concurrent sentence in this case.

4          THE COURT:  Let me take the first one, on July the

5    12th of this year, the probation office filed a petition for a

6    warrant for a summons for an offender under supervision which

7    recommended revocation of the defendant's supervised release.

8    On December 15th, 2003, the defendant had been sentenced for a

9    conspiracy to possess with intent to distribute more than

10   100 kilograms of marijuana in violation of 21 U.S.C., 841(a)(1)

11   and (b)(1)(B), VII and 846 in the United States District Court

12   for the Northern District of Florida.

13         The United States argues that defendant violated his

14   conditions of supervision by committing conspiracy to

15   distribute a controlled substance which included 500 grams or

16   more of methamphetamine to which the defendant plead guilty and

17   is now before the Court for sentencing for which I have just

18   sentenced him, failure to follow the instructions of the

19   probation officer, leaving a judicial district without

20   permission, and associating with persons engaged in criminal

21   activity.  The Court determines the applicable guidelines are

22   as follows:  Because the Court adopts, without objection, the

23   conclusions as the applicable guidelines, the highest grade

24   violation is A, the criminal history category is two, the

25   imprisonment range is 27 to 33 months with a maximum of

1   60 months, and supervised release a maximum of 60 months.

2       The other one is on August 1st of this year, the probation

3   officer filed a petition for warrant or summons for an offender

4   under supervision which recommended revocation of the

5   defendant's supervised release.  On July 20th, 2001, the

6   defendant was sentenced in the Republic of Mexico for

7   possession of marijuana and cocaine, introduction of firearms

8   and ammunition for the exclusive use of the Mexican Armed

9   Forces, and unlawful importation of a motor vehicle.  He

10  received a sentence of 97 months of imprisonment and three

11  years of supervised release.

12      The United States Parole Commission has found that the

13  transferee's offense is most similar to possession with intent

14  to distribute a controlled substance, unlawful possession of a

15  firearm, and evading import duties or restrictions.  The

16  United States argues that the defendant violated conditions of

17  supervised release by committing an assault, family violence, a

18  Class A misdemeanor, committing a terroristic threat of family

19  violence, a Class A misdemeanor; committing conspiracy to

20  distribute a controlled substance which included 500 grams or

21  more methamphetamine for which the defendant plead guilty and

22  was before this Court for sentencing today, failure to follow

23  instructions of the probation officer, leaving the judicial

24  district without permission, and associating with persons

25  engaged in criminal activity.

1    There was no objection to the calculation of the advisory

2   guidelines.  The highest grade violation is A, criminal history

3   category of three, and the imprisonment range is 18 to

4   24 months.  The maximum as to Count 1 is 36 months, Counts 3

5   and 4 is 24 months, supervised release as to Count 1, maximum

6   of 60 months, Counts 3 and 4, maximum term of 36 months.

7    Okay.  He's already plead to these, I believe; has he not?

8   Has he plead to these?

9            MR. SHEARER:  I don't believe so, Your Honor --

10           MR. LANGLOIS:  No.

11           MR. SHEARER:  -- I guess if the Court would ask

12   him --

13           THE COURT:  All right.

14           MR. SHEARER:  -- if he pleads true or --

15           THE COURT:  So as to Criminal No. DR-1300572 *[sic]*,

16   how do you plead to the allegation, that is the first one that

17   I read, guilty or not guilty?

18           THE DEFENDANT:  Guilty, Your Honor.

19           THE COURT:  All right.  And as to the revocation in

20   Criminal DR:13-00568 *[sic]*, how do you plead guilty or not

21   guilty?

22           THE DEFENDANT:  Guilty, Your Honor.

23           THE COURT:  Guilty.  Okay.

24    Based upon the defendant's pleas of guilty, the Court

25   finds the defendant guilty in both cases.

1      All right.  Do you want to argue for a particular

2  sentence?

3          MR. SHEARER:  Very briefly, Your Honor.

4      The Government doesn't really care if the Court runs the

5  two revocations concurrent to each other, but the Government

6  believes that the Court should stack something on top of the

7  sentence.  I'm not trying to heap on but just on the principal

8  that he's eventually going to get on supervised release, and,

9  if supervised release has any meaning, the Court should enforce

10 that.

11          THE COURT:  Counsel?

12          MR. LANGLOIS:  Your Honor, I would reiterate.  I'm

13 asking for a concurrent sentence in this case considering the

14 significant sentence he has on the primary offense.  I

15 recognize that, you know, the Court can certainly stack both

16 the revocations on top of here.  And, given the fact that he

17 has, you know, submitted to cooperation with the Government,

18 and that his sentence is 25 years, that that further punishment

19 would not significantly serve a purpose of deterrence.

20          THE COURT:  Okay.  Does your client wish to address

21 the Court?

22          THE DEFENDANT:  I apologize to the United States and

23 to you, Judge.  And God bless you.

24          THE COURT:  All right.  Having carefully considered

25 the 3553 factors in both cases as to Criminal

1   No. DR:13-00572 *[sic]*, it is hereby ordered that the term of

2   supervised release ordered by Honorable Steven P. Nichols

3   sitting in the Northern District of Florida on

4   December 15th, 2003, as set out in the judgment entered on

5   December 20th, 2003, being the same, is hereby revoked and set

6   aside.  The Court has considered the factors set forth in

7   18 U.S.C. 3583(e), 3553 and the U.S. Sentencing Comission

8   Chapter 7 Policy Statements.  Pursuant to the Sentencing Reform

9   Act, it is the order of this Court that the defendant is

10  committed to the custody of the -- of the Bureau of Prisons to

11  run -- to be in prison for a term of 33 months.

12          Now, as to Criminal No. DR:13-00568 *[sic]* it is hereby

13  ordered that the term of supervised release ordered by the

14  Court in the Republic of Mexico on July 20th, 2001, is hereby

15  revoked and set aside.  The Court has considered the factors

16  set forth in 18 U.S.C. 3583(e) and 3553 and the U.S. Sentencing

17  Commission Policy Guidelines.  Pursuant to the Sentencing

18  Reform Act of 1984, it is the order of the Court that the

19  defendant is committed to the custody of the Attorney General

20  of the United States, or its authorized representative, to be

21  in prison for a term of 24 months.

22          The two sentences I have just imposed shall be run

23  together, or concurrently, and 30 months of the two sentences

24  that are run -- that are being run concurrently shall run

25  consecutive to the sentence I just imposed upon the defendant

1 in Criminal No. SA:12-CR-899-02, the remaining three months

2 shall be concurrent.

3      Now, I must advise the defendant that with respect only to

4 the two supervised release sentences that you have the right --

5 that I've just imposed, you have the right to appeal both the

6 revocation and the sentences, excuse me, to the United States

7 Court of Appeals for the Fifth Circuit by filing a notice of

8 appeal within 14 days of the entry of judgment.  If you don't

9 have the assets to pay for all or part of the costs of an

10 appeal, or the services of a lawyer, that will be provided to

11 you at no cost.  The Court is not going to impose any

12 additional supervised release because he will already be under

13 a term of supervised release when he gets out.  I'm not going

14 to impose a fine, and there is no restitution.  And I

15 believe --

16      Is there a special assessment here?  I'm not sure.  I

17 don't believe so; right?

18         PROBATION OFFICER:  No.

19         THE COURT:  No.  No, special assessment.  Okay.

20      So you understand your right to appeal?

21         THE DEFENDANT:  (Witness nods head.)

22         THE COURT:  All right.

23         MR. LANGLOIS:  Could I clarify this for my client,

24 Your Honor.  One sentence is 33 months and one sentence is

25 24 months?

1          THE COURT:  And they're going to run together --

2          MR. LANGLOIS:  Right.

3          THE COURT:  -- so the total is 33 months, and then 30

4   of the 33 are going to be run consecutive to the 25 years he

5   just received --

6          MR. LANGLOIS:  All right.

7          THE COURT:  -- okay?

8      Do you understand that, Mr. Hernandez?

9          THE DEFENDANT:  Yes.

10         THE COURT:  All right.  Anything else?

11         MR. SHEARER:  Not from the Government, Your Honor.

12         MR. LANGLOIS:  No.

13         THE COURT:  Does he have a place that he would prefer

14  to serve his sentence?

15         MR. LANGLOIS:  I believe probably --

16         THE DEFENDANT:  Bastrop.  Bastrop.

17         MR. LANGLOIS:  Huh?

18         THE DEFENDANT:  Bastrop?

19         THE COURT:  Bastrop?

20         MR. LANGLOIS:  I thought you wanted to go down on

21  Three Rivers?

22         THE DEFENDANT:  Oh, Three Rivers?

23         MR. LANGLOIS:  Three Rivers -- well, he's from

24  The Valley, so would Three Rivers be better?

25         THE DEFENDANT:  Three Rivers or Bastrop.

1          THE COURT:  Yeah, I don't know where they'll put him

2     given his criminal history, and they're going to be --

3     unfortunately, for him, they're going to be aware of the death

4     threat against Kessler, so he, initially, at least, may end up

5     at a much higher classification.  He can then, if he behaves

6     himself for a period of time, work his way back down to a lower

7     classification.  But I don't know what the -- I don't think

8     that either Three Rivers, or Bastrop is going to be a high

9     enough classification, although I'm not sure.

10          MR. SHEARER:  Beaumont may be the closest highest

11    classification.

12          THE COURT:  Let me say this, I will make a

13    recommendation that he serve his sentence someplace here in

14    Central or South Texas; okay?  That's the best I can do.

15          MR. LANGLOIS:  Judge, could you -- I'm not sure.

16    Will he be eligible for the 500-hour drug class to give him

17    something to do?

18          THE COURT:  Hardly.  And, even if he were eligible,

19    it would be 24 years from now because it has to be within, I

20    think, 18 to 24 months, maybe 36 months, of his release.  I

21    don't even know whether that program is even going to exist.

22          MR. SHEARER:  And if he's had it previously,

23    Your Honor, they may not give it to him.  And they may give it

24    to him again, but he may not be eligible for the early out --

25          THE COURT:  Right.

1          MR. SHEARER:  -- which is what he really wants.

2          MR. LANGLOIS:  The other thing he has concern about,

3 Your Honor, is that he has two people that may be aware that he

4 cooperated.

5          THE COURT:  Yeah.  No, I'm going to notify the Bureau

6 of Prisons that they should get together with the

7 U.S. Attorney's Office.  The U.S. Attorney's Office should

8 notify them of any individuals who may be aware he may have

9 cooperated against so that he is not placed in any institution

10 to which they are placed.  That's why I'm concerned about, you

11 know, where he goes.  That's my concern.  We certainly don't

12 want him running head on into somebody that he has cooperated

13 against.  That would not be a good idea.

14     Okay.  Anything else?

15          MR. LANGLOIS:  That's all, Your Honor.

16          THE COURT:  All right.  The court stands in recess on

17 this matter.

18          COURT SERVICES OFFICER:  All rise.

19          (Whereupon said Sentencing and Final

20 Revocation hearing proceedings concluded.)

21

22

23

24

25

# C E R T I F I C A T E

I, Kristin M. Anderson, a Registered Professional Reporter, and Official Court Reporter for the U.S. District Court, Western District of Texas do hereby certify:

That the foregoing is a true and correct transcript of the proceedings transcribed from my stenographic notes in the above-entitled matter;

That I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested in the action.

WITNESS my hand on this 29th day of January, 2014.


        /s/ Kristin M Anderson
Kristin M. Anderson, RPR
United States Court Reporter
655 E. Cesar E. Chavez Blvd.
San Antonio, TX 78206